UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DUTTON,<br><br>           Petitioner,<br><br>  vs.<br><br>RON DAVIS, Warden,<br><br>           Respondent. | No.  2:13-cv-2616-EFB P<br><br><br><br><br>ORDER |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He challenges a judgment of conviction entered against him on June 30, 2010, in the Sacramento County Superior Court on three counts of lewd and lascivious acts upon a minor under 14 years of age.  He seeks federal habeas relief on the grounds that the trial court violated his right to due process in admitting expert testimony regarding Child Sexual Abuse Accommodation Syndrome.

Upon careful consideration of the record and the applicable law, the court finds that petitioner's application for a writ of habeas corpus must be denied.

/////

/////

---

[1] The parties in this action have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant David Dutton appeals following a jury trial and conviction on three counts of lewd and lascivious acts upon a minor under 14 years old (Pen.Code, § 288, subd. (a)),FN1 who is defendant's biological daughter.  Other counts against another victim were dismissed after the jury was unable to reach a verdict.  Defendant contends the trial court erred in admitting expert testimony regarding Child Sexual Abuse Accommodation Syndrome (CSAAS).  We affirm the judgment.
>
> FN1. Undesignated statutory references are to the Penal Code.
>
> Section 288, subdivision (a), provides in pertinent part: "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ."
>
> **FACTUAL AND PROCEDURAL BACKGROUND**
>
> An information filed in June 2008 charged defendant in counts one, two, and three of lewd and lascivious acts upon his daughter, K.B., a minor under 14 years of age.  The pleading also charged defendant in counts four, five, and six of the same offense against a different victim, his stepdaughter, Ki.S., but count six was dismissed before trial, and the jury deadlocked on the other counts involving Ki.  The pleading also alleged a sentencing enhancement for multiple victims.  (§ 667.61, former subd. (e)(5) (now subd. (e)(4)).)
>
> **In Limine Hearing**
>
> In opposing in limine motions, defendant sought to preclude the prosecutor from introducing expert testimony on CSAAS and the prosecutor sought to introduce CSAAS testimony.FN2  The defense moved to exclude the evidence on the grounds it was inapplicable, irrelevant, more prejudicial than probative (Evid.Code, § 352), speculative, misleading, confusing, and in violation of defendant's constitutional rights.  The defense argued CSAAS applies only in cases of delayed disclosure.  He argued that in the case of K., there was no delayed disclosure, and in the case of Ki., he did not plan to make an issue of delayed disclosure.  The prosecutor responded that delayed disclosure was merely one of five independent prongs of CSAAS, and was not weighted more heavily than the other four prongs.

FN2. At the hearing on the motion in limine, the trial court began its review with "the People's motions in limine," and referred to the motion seeking to admit testimony regarding CSAAS as "[i]n limine three." The prosecution's motions in limine are not part of the record on appeal.

The trial court stated that, even in the absence of a defense attack on a point, expert testimony on CSAAS is appropriate "to dispel myths that exist in this world of child molestation." The trial court ruled it would allow the testimony subject to conditions that the witness qualify as an expert; that he not testify that the victims in this case actually suffered from or exhibited characteristics of CSAAS; that the evidence be admissible to rehabilitate victim credibility only if and when the defense claimed the victims delayed disclosure or recanted; and that the court would admonish the jury on the limited use of the expert testimony, both before the testimony and in the concluding instructions.

**Prosecution Case**

K. was born to defendant and G.B. in May 1995. At the time of the events involving K., she lived with her mother, her brother, and three sisters in a mobile home. They rarely saw defendant, who was a truck driver.

Two days before Christmas 2006, when K. was 11 years old, defendant came to visit. K. was to sleep on the couch while defendant slept in her bed. However, K. joined defendant in the bed to "cuddle." Defendant rubbed K.'s vagina and touched her breasts over her clothes. Defendant then put his fingers in her vagina. He forced her to rub his penis and said, "You fuck like me." When defendant got up to use the bathroom, K. tried to go to her mother's room, but defendant stopped her and took her back to bed. He got on top of her and "started putting his fingers inside" her again. He then put his penis "halfway inside" her vagina. K. did not scream because defendant had threatened her in the past that he would "kill me if I told." Defendant got up to go to the bathroom again. K. ran and woke up her mother but was afraid to tell her mother what happened, so she said she had lice. The mother told K. to go lie on the couch.

The next morning, K. went to church with her mother and other family members. K. told her Bible study teacher what defendant had done. The teacher told K.'s mother, who told the pastor, who called law enforcement.

Sheriff's deputies arranged a meeting at a parking lot, where K. told a deputy what had happened. At some point, defendant arrived at the parking lot. The mother told the deputy that K. had made up stories in the past when she felt defendant was ignoring her. K. saw the deputies take defendant aside to talk to him, and this made her feel "weird." She testified, "I didn't want to tell but I had to." But after the deputies were finished talking to defendant, K. told the deputy that defendant did not do anything. K. testified that she

3

recanted because the deputies told her defendant did not do anything and accused her of lying.

Later, K. told her mother she lied when she recanted, and defendant really did what she first said. The mother took K. to the emergency room. A deputy sheriff met them there and took a statement from K., who said defendant made her rub his penis; he pulled down her pants and panties; he placed his finger inside her vagina; he climbed on top of her; and he forced his penis into her vagina. K. told the deputy that she had lied earlier when she said she made up the story; she believed that was what the deputies wanted to hear. K. admitted she had fabricated a claim of abuse against defendant several years prior, but this time it was true.

K. also testified that defendant had removed her clothing and put his mouth on her vagina a couple of years before the 2006 abuse, when she and one of her sisters were riding with defendant in his truck. She never previously told anyone about that incident.

The defense used cross-examination of K. to attack her credibility, eliciting that (1) she had the opportunity to disclose the abuse to her mother or sisters as they were getting ready to go to church, but she failed to do so; (2) she changed her story and recanted when speaking with the deputies; and (3) she lied about being abused in the past. The defense similarly challenged Ki.

Dr. Anthony Urquiza, a psychologist, testified as a prosecution expert in CSAAS. Immediately before he testified, the trial court admonished the jury: "You are about to hear testimony regarding the Child Sexual Abuse Accommodation Syndrome. This testimony is not evidence that the defendant committed any of the charged offenses. You may consider this evidence only in deciding whether or not [K.]B.'s and [Ki.]S.'s conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of each victim's testimony."

Dr. Urquiza testified that the term CSAAS had been coined by a psychiatrist, Dr. Roland Summit, who published an article about it in 1983 "specifically to educate people who would be treating sexually abused children, so therapists, . . . would get rid of any misperceptions or myths or misunderstandings that they had about sexual abuse" so "they would then be able to do a better job of treating that child and ideally a better job of dealing both with the child and the child's family."

Dr. Urquiza testified that CSAAS has five components: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed and unconvincing disclosure, and (5) retraction. Secrecy deals with the abuser's efforts to coerce the child into keeping quiet. Helplessness addresses the misconception that people have that children will run away if someone tries to abuse them. Research has shown children are vulnerable and unable to protect themselves, and even more so when they have a relationship with an abuser who has some control over them. Entrapment describes the victim's sense of being "stuck" in the situation because s/he cannot tell

4

anybody about the abuse and cannot stop it from happening again. As a result a victim accommodates by coping - managing one's feelings - sometimes leading to disassociation. Delayed disclosure addresses the misconception that an abuse victim will report the abuse right away. Research shows that, while some do report abuse right away or soon thereafter, a significant number of victims do not report it right away, and some may take months or even years before they are able to tell someone. Dr. Urquiza opined that most children have a delay in disclosure but some children disclose "relatively soon" after the incident. Unconvincing disclosure addresses the reporting inconsistencies that are typical with children. Dr. Urquiza testified that Dr. Summit had spoken of children disclosing a little and then disclosing more if they felt safe doing so, which could appear unconvincing. Dr. Urquiza said inconsistencies are typical with children because they are usually better at describing the big picture than the details. The fifth behavior – retraction – addresses children who disclose and then take it back. Although Dr. Summit's 1983 article said retraction was "common" in children, Dr. Urquiza opined from the research that retraction occurs only with approximately one-fourth of children who have been sexually abused. However, a child is more likely to retract allegations when the abuser is a family member and/or pressure is put on the child to take back the allegation.

On cross-examination, Dr. Urquiza said CSAAS is "an educational tool, not a diagnostic tool. So the purpose of using it to diagnose or to say that a particular person is abused because they meet certain criteria would be improper." CSAAS does not purport to prove sexual abuse, and the theories are irrelevant unless there is first an assumption that abuse has occurred. When asked to confirm that CSAAS should not be used to determine whether a person is a perpetrator of a particular incident, Dr. Urquiza responded, "Well, I would go even further by saying it is not my place or the place of any mental health provider to provide an opinion about whether a particular person was abused or not, or whether a particular person was the perpetrator or not. That would be an improper opinion for me to have. That is a responsibility of people who serve on the jury." Dr. Urquiza said he had never met or spoken with K. or Ki. Dr. Urquiza acknowledged that Dr. Summit had written a subsequent article, in which he expressed concern that CSAAS was being misused, with prosecutors trying to diagnose abuse, and defense attorneys arguing that alleged victims who did not match all five CSAAS factors had not been abused.

A pediatric nurse practitioner, who examined K. and testified numerous times as an expert in child sexual assault exams, said she examined K. on January 29, 2007, and noticed irregularities on her hymen, but given her stage of puberty, the nurse was unable to say whether or not K. had been sexually abused.

Criminalists tested K.'s blanket and found semen, and the profile from the sperm was consistent with defendant's DNA profile. Epithelial cells consistent with K.'s DNA profile were mixed with the sperm. The profile from the sperm found in the blanket sample occurred in one in 100 quintillion of the African–American

5

population, one in four quintillion of the Caucasian population, and one in 640 quadrillion of the Hispanic population.

**Defense Case**

The defense called as a witness Deputy Dennis Peyton, who took statements from K. and her mother at the hospital. He recalled that the mother said K. came out of her bedroom on the night of the incident and said "Daddy made my bed. You can come sleep with me tonight." The mother also said she saw K. and defendant talking in the living room around 3:00 a.m., and K. did not say anything at that time about being molested.

The defense called as a witness Margaret Taylor, the deputy sheriff who responded to the parking lot and spoke with K. She testified that the mother did not believe K. The mother said K. had made up stories in the past for attention. Deputy Taylor confronted K. with what her mother had said. K. admitted she had made up stories in the past, but stated that the current allegations were true. While defendant was being interviewed by Deputy Taylor's partner, K. told Deputy Taylor that defendant did not do anything. K. seemed remorseful that she had wasted the deputies' time. Taylor concluded a crime report was not warranted.

**Jury Instructions**

At the end of the trial, the court instructed the jury on CSAAS for the second time: "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome. [¶] Dr. Urquiza's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [K.] B.'s or [Ki.]S.'s conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of their testimony."

**Verdict and Sentencing**

The jury returned verdicts finding defendant guilty on counts one, two, and three involving victim K. The jury was unable to reach a verdict on counts four and five involving Ki.

On September 24, 2010, the trial court sentenced defendant to the upper term of eight years on count one, with consecutive two-year sentences - one-third the midterm - on each of counts two and three, for a total of 12 years.

*People v. Dutton*, No. C066358, 2012 WL 3264554, at \*\*1-4 (Cal.App.3d Dist. Aug. 13, 2012).

After the California Court of Appeal affirmed petitioner's judgment of conviction, he filed a petition for review in the California Supreme Court. Resp't's Lodg. Doc. 5. That petition was summarily denied. *Id.*

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

/////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

8

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Due Process Claim**

Petitioner's sole claim for relief is that the trial court's admission of expert testimony on the topic of Child Sexual Abuse Accommodation Syndrome rendered his trial fundamentally unfair, in violation of his right to due process. ECF No. 1 at 5, 27. Petitioner argues that "the expert's testimony was not material to an issue in the case and therefore not probative, but was otherwise unduly prejudicial and violated [petitioner's] rights to due process, a fair trial, and to confront the witnesses against him." *Id.* at 28. He also argues that the limiting instruction given by the trial court, which informed the jurors how to evaluate the CSAAS testimony, "would not have had the desired effect" because the testimony was "so prejudicial and suggestive." [3] *Id.* at 39.

/////

/////

---

[3] Child sexual abuse accommodation syndrome "describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse." *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003).

**A. State Court Decision**

The California Court of Appeal denied this claim on direct appeal. The court reasoned as follows:

> Defendant argues the trial court improperly allowed expert evidence on CSAAS, because (1) no foundation was laid that any myths or misconceptions still remained in the general public in 2010 when the trial was held, and (2) the putative myths did not pertain to this case. We are not persuaded.
>
> It is well settled that while CSAAS testimony is inadmissible to prove that a molestation occurred, it is nevertheless admissible to rehabilitate a putative victim's credibility when the defense suggests the child's conduct after the incident is inconsistent with the claim of abuse. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*); *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744 (*Patino*).) "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, *supra*, 53 Cal.3d at p. 1301.) "[I]t is the People's burden to identify the myth or misconception the evidence is designed to rebut." (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394.) However, this does not mean the prosecutor must expressly state on the record the evidence that is inconsistent with molestation. (*Patino, supra*, 26 Cal.App.4th at p. 1744.) Rather, it suffices that the victim's credibility is placed in issue due to paradoxical behavior. (*Id.* at pp. 1744–1745.) Even before cross-examination, the victim's direct examination may place credibility in issue for purposes of allowing CSAAS evidence. (*People v. Housley* (1992) 6 Cal.App.4th 947, 956 [victim directly placed her credibility in issue by retracting her molestation claims].)
>
> A trial court's decision to admit CSAAS evidence will not be disturbed on appeal absent a manifest abuse of discretion. (*McAlpin, supra*, 53 Cal.3d at p. 1299.)
>
> Defendant fails to show abuse of discretion. He argues no foundation was laid that the general public in 2010 had any myths or misconceptions about child sexual abuse. He quotes a dissenting opinion in a 1973 case - which did not involve CSAAS - that the average juror was sophisticated and knowledgeable and in many cases as educated as law school graduates. (*People v. Johnson* (1973) 32 Cal.App.3d 988, 1003 (dis. opn. of Gardner, P.J.) [dissenting with the majority opinion, which reversed a murder conviction for improper admission of confessions the defendant made after taking a truth serum].)
>
> However, a dissenting opinion has no controlling weight. (*See People v. Ceballos* (1974) 12 Cal.3d 470, 483.) Moreover, the myths and misconceptions about child sexual abuse are well-established in case law. (E.g., *McAlpin, supra*, 53 Cal.3d 1289.) Defendant cites no evidence that the public has become so well

informed about child sexual abuse that CSAAS evidence is no longer necessary. To the contrary, the Supreme Court in 2004 reiterated the admissibility of CSAAS evidence in concluding by analogy that expert evidence of behavior of domestic violence victims was admissible. (*People v. Brown* (2004) 33 Cal.4th 892, 904–907, citing *McAlpin, supra*, 53 Cal.3d 1289.) Expert testimony is admissible on any subject "sufficiently beyond common experience that the opinion of an expert would assist the

trier of fact." (Evid.Code, § 801, subd. (a); *Brown, supra*, 33 Cal.4th at p. 905.)

Defendant's second point, that CSAAS was not pertinent to this case, is based on two fallacies: (1) that delayed disclosure is "generally, the only type of behavior to which [CSAAS] evidence is relevant," and (2) that delayed disclosure was not at issue in this case. Defendant is wrong on both counts.

Defendant cites the court's statement in *Patino* that CSAAS evidence is admissible if "the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation" (*Patino, supra*, 26 Cal.App.4th at pp. 1744–1745), for the proposition that such evidence is only admissible when there is delayed reporting. (AOB 23) Defendant ignores the word "including" and cites no authority that delayed disclosure is a prerequisite for CSAAS evidence.

In any event, delayed disclosure was at issue in this case. K. did not tell anyone about the incident immediately after it happened, nor did she tell anyone the next morning before the family went to church. She delayed reporting the incident until she got to Bible study. In closing argument, defense counsel did raise the point that K. spoke with her mother immediately after the incident but, according to the mother, all that was said was something about head lice or someone knocking at a window. In any event, regardless of how much or little emphasis was given by the defense, reasonable jurors could have viewed the short delay in reporting as paradoxical behavior for an abuse victim. Defendant cites cases involving longer delays, including a case in which the witness said it was common for children to delay reporting for years. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1148.) Defendant tries to extract a rule that the delay must be a significant enough period of time, in and of itself, to raise a doubt about the witness's veracity. Defendant's extrapolation is unavailing. Cases are not authority for propositions of law not therein considered. (*People v. Scheid* (1997) 16 Cal.4th 1, 17.) Moreover, as we have noted, K. also testified about a prior molestation that had taken place a couple of years before the charged molest. She explained that she had never previously told anyone about that incident.

Defendant cites authority that CSAAS evidence must be targeted and limited to specifically identified misconceptions. (*People v. Bergschneider* (1989) 211 Cal.App.3d 144, 158–159 (*Bergschneider*), *overruled on another ground* in *People v. Griffin* (2004) 33 Cal.4th 1015, 1028.) However, this does not require the

12

prosecutor "to expressly state on the record the evidence which is inconsistent with the finding of molestation. It is sufficient if the victim's credibility is placed in issue due to the paradoxical behavior . . . ." (*Patino, supra*, 26 Cal.App.4th at p. 1744.) Here, the relevance of CSAAS evidence was apparent because the victim did not immediately report the incident and later recanted the accusation. The expert briefly spoke of all five prongs of CSAAS: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed and unconvincing disclosure, and (5) retraction. Based on the evidence, all were present here except for accommodation. There was evidence of secrecy in K.'s testimony that she felt coerced not to tell because defendant previously said he would kill her. There was evidence of helplessness and entrapment in K.'s testimony that she did not jump out of bed or scream as soon as the molestation started, but instead waited for defendant to go to the bathroom, and did not resist when he stopped her from leaving. As we have noted, there was evidence of delayed disclosure, in that K. did not report the molestation that night or the next morning until she got to Bible study, and she never previously reported the prior molestation. There was evidence of retraction, as K. later recanted the accusation while defendant was standing nearby being interviewed by the deputies.

We conclude the trial court did not abuse its discretion in admitting the evidence.

Even assuming for the sake of argument that delayed disclosure was not at issue or that the expert's testimony was overbroad in describing all five prongs of CSAAS, any error was harmless because it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the CSAAS evidence. (*People v. Prieto* (2003) 30 Cal.4th 226, 247.) Defendant claims the evidence rendered the trial unfair in violation of his due process rights, requiring a prejudice analysis under the standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]. However, "introduction of CSAAS testimony does not by itself deny appellant due process." (*Patino, supra*, 26 Cal.App.4th at p. 1747.) And defendant fails to show that the evidence rendered his trial unfair.

Here, although the expert generally described all five prongs of CSAAS, he did not elaborate, and the expert's testimony consumes only 40 pages of reporter's transcript, more than half of which is cross-examination by defense counsel. (*Bergschneider, supra*, 211 Cal.App.3d at pp. 159–160 [CSAAS evidence, though broader than necessary, was harmless].) And the trial court instructed the jury twice on the limited use of this evidence. Moreover, while defendant describes this as a close case that was essentially a credibility contest, defendant's semen was found on K.'s blanket.

Defendant suggests prejudice is shown because the jury deadlocked on the charges involving Ki., and he views the CSAAS evidence as directed to K. despite the fact that her name was not used. However, defense counsel did call Ki. a liar in closing argument to the jury, based in part on her earlier retraction of abuse accusations

13

> she made against defendant and based on inconsistencies in her story. Moreover, the fact that the jury deadlocked as to Ki. shows the jury was not unduly swayed by the expert evidence.
>
> We see no grounds for reversal.

*Dutton*, 2012 WL 3264554 at ** 4 -6.

### B. Applicable Legal Standards

A federal habeas petitioner "bears a heavy burden" in showing a due process violation based on an evidentiary decision by a state trial court. *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence" and it is of "such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)). A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)). The Ninth Circuit has also observed that:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Id. See also Greel v. Martel*, No. 10-16847, 472 F. App'x 503, 504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established federal law that admitting prejudicial evidence violates due process.").[4]

/////

---

[4] Citation to this unpublished Ninth Circuit opinion issued after January 1, 2007 is appropriate pursuant to Ninth Circuit Rule 36-3(b).

14

### C. Analysis

In light of the authorities cited above, the state courts' rejection of petitioner's argument that the trial court violated his right to due process in allowing the admission of expert evidence about CSAAS does not support the granting of federal habeas relief under AEDPA. There is no "clearly established federal law" that the admission of CSAAS evidence in a child molestation case violates the due process clause. This claim also fails on the merits.

As discussed by the California Court of Appeal, California law admits CSAAS evidence for certain limited purposes with proper admonishments to the jury regarding the limits of such evidence. *See, e.g., People v. Patino*, 26 Cal.App.4th 1737 (1994). Moreover, the Ninth Circuit has noted that expert testimony about CSAAS has been admitted "in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." *Brodit*, 350 F.3d at 991 (citing *United States v. Bighead*, 128 F.3d 1329 (9th Cir. 1997) (per curiam) and *United States v. Antone*, 981 F.2d 1059 (9th Cir. 1992)). The Ninth Circuit has concluded that this type of general testimony "merely assist[s] the trier of fact in understanding the evidence; it [does] not improperly bolster the particular testimony of the child victim." *Antone*, 981 F.2d at 1062.

In *Brodit*, the Ninth Circuit found that where the trial court instructed the jury that expert testimony concerning CSAAS could not be considered as proof that the sexual abuse had occurred, petitioner's due process rights were not violated by the admission of the testimony. *Brodit*, 350 F.3d at 991. Here, as in *Brodit*, Dr. Urquiza's testimony was not admitted to prove the ultimate question of petitioner's guilt, and the jury was given two limiting instructions, both prior to the testimony and at the close of evidence. Reporter's Supplemental Transcript on Appeal at 3; Reporter's Transcript on Appeal at 718. The court presumes that the jurors followed these instructions. *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007). Further, the CSAAS evidence was not unreliable and it was relevant to evaluate the credibility of the victim's testimony, given that she had recanted her allegations, had delayed in immediately reporting the abuse, testified to acts of secrecy, and reported acts that demonstrated helplessness and

entrapment. Under the circumstances presented here, the admission of Dr. Urquiza's expert testimony regarding CSAAS did not violate petitioner's right to due process. *Brodit*, 350 F.3d at 991. *See also King v. Adams*, No. C 11-02792-SI, 2014 WL 4246581 (N.D. Cal. Aug. 26, 2014) (rejecting petitioner's due process challenge to the admission of CSAAS evidence at his trial).

For the foregoing reasons, the decision of the California Court of Appeal rejecting petitioner's due process claim is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to federal habeas relief.[5]

**IV. Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is denied. The court declines to issue a certificate of appealability.

DATED: June 20, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[5] In the traverse petitioner argues, in response to an argument raised in respondent's Answer, that the trial court "erred" in admitting evidence of the victim's blanket which contained his DNA. ECF No. 14 at 24. Petitioner argues that the blanket was "tainted" and "contaminated." *Id.* He asserts that the court should hold an evidentiary hearing to determine the chain of custody of the blanket. *Id.* Petitioner also claims that without the introduction of evidence about the blanket, the evidence against him was insufficient to support the jury's verdict. *Id.* at 25. In addition, petitioner argues in the traverse, without elaboration, that "cumulative errors violated due process rights of defendant." *Id.* To the extent petitioner is attempting to belatedly raise new claims in the traverse, they are denied. A traverse is not the proper pleading to raise additional grounds for relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a party's opening brief"). Further, these claims have not been exhausted in state court. *See Rose v. Lundy*, 455 U.S. 509 (1982) (the exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings). Even if these claims had been properly raised, petitioner's vague and conclusory allegations fail to demonstrate that prejudicial constitutional error of any kind occurred at his trial. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'")). Nor has petitioner demonstrated entitlement to an evidentiary hearing. *See Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011) (an evidentiary hearing in federal court on a claim that was adjudicated on the merits in state court is appropriate only if a petitioner can overcome the limitation of 28 U.S.C. § 2254(d) on the record that was before that state court). Accordingly, petitioner's claims raised in the traverse based on the admission of evidence regarding the blanket and cumulative error are denied.